Rodney Pederson, Pro Se
3705 Arctic Blvd. #1587
Anchorage, AK 99503
907-243-7494



IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

RODNEY S. PEDERSON,　　　　　　　　　)
an individual,　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　Plaintiff,　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　vs.　　　　　　　　　　　　　　　 )
　　　　　　　　　　　　　　　　　　　　)
WILLIAM MORSE, PRESIDING JUDGE OF　　)
THE THIRD JUDICIAL DISTRICT AT　　　　 )
ANCHORAGE, JUDGE MICHAEL COREY,　　　)
ANCHORAGE TRIAL COURT, JUDGE ERIN　　)
MARSTON, ANCHORAGE TRIAL COURT,　　　)
JUDGE ANDREW PETERSON,　　　　　　　　)
ANCHORAGE TRIAL COURT, JAMES E.　　　 )
TORGERSON, STOEL RIVES,　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　Defendants.　　　　　　 )
_____ )　Case No. 3:18 CV-00252-RRB

## COMPLAINT UNDER THE CIVIL RIGHTS ACT

**A.　　Jurisdiction**

Jurisdiction is invoked under 28 USC sec. (a)(1)(2)(3) & (4) and 42 USC sec. 1981,

1982, 1983, & 1985. In addition, Plaintiff's Alaska Native Corporation stock was

transferred to him and continues to be governed pursuant to the terms of the Alaska

Native Claims Settlement Act, 43 USC sec. 1601 et seq. and specifically applicable to

this case, 43 USC sec. 1606 (h) (1) (A) vests in the Plaintiff all of the rights of a stock-holder of a business corporation incorporated in the State of Alaska.

As a threshold matter regarding the jurisdiction of this court over the judicial officer defendants named below, the injunctive relief requested, or any relief, in damages or otherwise for that matter, is not available in the courts of the State of Alaska pursuant to the federal statutes listed above for the civil rights violations that are alleged below. Such relief can only be obtained by the Plaintiff from this Court. Regarding immunity of judicial officers from suit, immunity does not apply to actions taken without jurisdiction. Each of the defendant judges attempted to take jurisdiction over an issue or issues that the Alaska Supreme Court **did not** remand for further proceedings while each refused to address the issues actually remanded. Any action taken by each court concerning or in furtherance of issues NOT remanded were taken without actual jurisdiction, and in violation of my civil rights.

In addition, intentional acts which violate the civil rights of individuals, or intentional act committed for prohibited reasons, including actions violating my civil rights, as an Alaska Native, as alleged below, including the actions of judicial officers participating in a conspiracy to deny or which in fact denies the civil rights of an individual because of his race or another prohibited reason, renders the acts or actions beyond the jurisdiction of the judicial officer or officers participating. Absolute immunity is not a

bar to suit seeking only injunctive relief, (NOT money damages) from judicial officers acting outside of their jurisdiction, for civil rights violations.

**B.     Parties**

1. <u>Plaintiff</u>  This complaint alleges that the civil rights of Rodney S. Pederson, who's current mailing address for purposes of receiving orders and notices from the court and service from the defendants is **3705 Arctic Blvd #1587, Anchorage, Ak 99503,** were violated by the actions of the individuals named below.

2. <u>Defendants</u>

Defendant No. 1.  William Morse is a citizen of Alaska, and is employed as a Superior Court Judge.   The defendant **personally participated** in the violation of my civil rights and in concert with other persons, violated one or more of the federal statutes listed above.  The policies, customs or practices of the Anchorage Trial Courts as applied to me by this defendant and the other named defendants in the specific case in which I am a litigant against the Arctic Slope Regional Corporation ("ASRC") have violated and continue to violate my civil rights, and I seek **injunctive relief, or any other relief the court deems appropriate.**

Defendant  No. 2.  Michael Corey is a citizen of Alaska, and is employed as a Superior Court Judge.   The defendant **personally participated** in the violation of my civil rights and in concert with at least one other person, violated one or more of the federal statutes

listed above. The policies, customs or practices of the Anchorage Trial Courts as applied to me by this defendant and the other named defendants in the specific case in which I am a litigant against ASRC have violated and continue to violate my civil rights, and I seek **injunctive relief, or any other relief the court deems appropriate.**

Defendant No. 3. Erin Marston is a citizen of Alaska, and is employed as a Superior Court Judge. The defendant **personally participated** in the violation of my civil rights and in concert with other persons, violated one or more of the federal statutes listed above. The policies, customs or practices of the Anchorage Trial Courts as applied to me by this defendant and the other named defendants in the specific case in which I am a litigant against ASRC have violated and continue to violate my rights, and I seek **injunctive relief, or any other relief the court deems appropriate.**

Defendant No. 4. Andrew Peterson is a citizen of Alaska, and is employed as a Superior Court Judge. The defendant **personally participated** in the violation of my civil rights and in concert with other persons, violated one or more of the federal statutes listed above. The policies, customs or practices of the Anchorage Trial Courts as applied to me by this defendant and the other named defendants in the specific case in which I am a litigant against ASRC have violated and continue to violate my rights, and I seek **injunctive relief, or any other relief the court deems appropriate.**

Defendant No. 5. James E. Torgerson is a citizen of Alaska, and is employed as an attorney at the law firm of Stoel Rives with an office at **510 L St., Suite 500, Anchor-**

**age , Ak 99501**.  The defendant **personally participated** in the violation of my civil rights and in concert with other persons, violated one or more of the federal statutes listed above; more specifically, while representing his client ASRC, in a case in which I am involved as a litigant against ASRC, this defendant participated with one or more of the above named defendants in actions that have violated and continue to violate my civil rights, and **against this defendant** I seek **injunctive relief, or any other relief, including money damages, that the court deems appropriate.  Because this defendant is not a state employee or judicial officer, this is the ONLY defendant from whom I seek money damages.**

**C.  Causes of Action**

Plaintiff, Rodney S. Pederson, for his complaint against Defendants states and alleges as follows:

To summarize and clarify the organization of the several Claims below, Claim 1 through Claim 5 allege, and the Supporting Facts for Claims 1 through 5 demonstrate how each Defendant's actions or omissions violated my civil rights in violation of one or more of the federal statutes listed above.  Claim 1 through Claim 4 also provide supporting facts that show how each judicial officer's prohibited actions or omissions were beyond each Defendant's remanded jurisdiction.  Claim 6 through Claim 10 allege and the Supporting Facts for Claims 6 through 10 demonstrate how the actions or omissions of each of the Defendants, constituted acting in concert with one or more of the other Defendants,

which resulted in a conspiracy that violated my civil rights, and the violation of one or more of the statutes listed above, specifically including 42 USC sec. 1985.

Claim 1:  On or about December 5, 2014, and on an unknown date or dates thereafter, my right to equal protection of the law and rights to due process were violated by the actions or omissions of Judge Michael Corey, in violation of one or more of the federal statutes listed in section A above.  In addition, the actions or omissions of Judge Corey that violated my civil rights were committed beyond the jurisdiction remanded by the Alaska Supreme Court for further proceedings by the Court's Opinion in *Pederson v. Arctic Slope Regional Corp.,* 331 P.2d 384 (AK 2014).

Supporting Facts

During Judge Corey's hearing on my Motion for Judgment Consistent with the *Pederson* Opinion of the Supreme Court of Alaska, which was held the morning of December 5, 2014, Judge Corey made it perfectly clear that he was not going to be granting judgment in my favor, regardless of the Alaska Supreme Court's Opinion recently having been issued, reversing Judge Tan's ruling for the Arctic Slope Regional Corp. ("ASRC").  In fact, during the hearing, Judge Corey instead made it clear that for me to obtain judgment against ASRC from his court would require another appeal by me to the Supreme Court.  Judge Corey made statements during the hearing indicating that he agreed with the rulings of the prior trial court that had been reversed like "Judge Tan got it right."

Judge Corey's comments were likely intended to antagonize me as much as indicating his claimed authority to ignore the Opinion of the Supreme Court (by "Judge Tan got it right") when refusing to comply with the remand orders of the Court which exhibited a disdain for the law, a lack of respect for the position to which he had been just recently appointed, and resulted in the denial of my right to the equal protection of the law guaranteed to every citizen. Judge Corey, with nearly thirty years as an attorney, did not misunderstand the law or "misread" the Opinion of the Supreme Court. Judge Corey knew what the Opinion meant and what the law was; he was intentionally refusing to properly apply the law as clarified by the Alaska Supreme Court for the benefit of an Alaska Native litigant, which impermissibly reduced the value of my ASRC stock, taking a valuable personally property right from me without due process of law.

In addition to refusing to apply the law, consistent with the Opinion of the Supreme Court, Judge Corey exhibited bias against me and tried to antagonize me during the hearing, perhaps in attempt to get me to lose my temper, but also to convince me to settle on unfavorable terms or to dismiss my action. At the end of the hearing, after giving opposing counsel everything he had requested and could have hoped for, or may even had pre-arranged, when ASRC said "thank you" to the court, Judge Corey could not resist one more slight against me and said "and I know Mr. Pederson thanks me too" which I took to mean for ruling against me.

Subsequent events reinforce my allegation of bias and denial of equal protection.

December 5, 2014 was a Friday. Immediately after the hearing, because I recognized the inappropriateness of Judge Corey's conduct during the hearing, I began work on a motion to disqualify setting forth the facts, including some of the more offending statements and reviewing case law. After reviewing the canons of judicial conduct the next Monday, I completed my motion which I filed the next Tuesday December 9, 2014.

Certain traumatic experiences are seared into a person's memory and can never be removed. Some of Judge Corey's comments during that December 5, 2014 hearing are seared into my memory. His apparent or feigned disdain for the Supreme Court's reversal of Judge Tan's rulings "Judge Tan got it right"; and his desire to rub salt into my open wound at the end of the hearing "and I know Mr. Pederson thanks me too". Like the stinging words of a bully granted the power to determine your fate who knows you are powerless. My Motion for Disqualification of Judge Corey and Motion for Reconsideration of Judge Corey's oral denial of my motion for judgment are attached for additional factual detail.

I didn't obtain a copy of the recording of the hearing to prepare my motion for disqualification as the words said were perfectly fresh in my mind, but I strongly urged any reviewing court to listen to the recording to hear Judge Corey in action. As I expected, Judge Corey denied my motion to disqualify. The reviewing court, Judge Aarseth, I believe, affirmed the denial, which I chalked up to professional courtesy between judges, and I am not aware if he actually listened to the recording of the hear-

ing. Very soon after this though, Judge Corey was assigned the cases of a retiring judge and was removed from my case.

It was not until much later, in April of 2017 that I actually obtained a copy of the recording of the December 5, 2014 hearing. I obtained the copy to move to have the transcript the defendant ASRC had filed stricken because the transcript seemed to be missing some of the comments that Judge Corey had made. ASRC counsel had filed the transcript with another pleading so I wanted to compare it against the official court recording for accuracy.

I had learned that the law firm purchaser of transcripts sometimes "made mistakes" in them, in their favor of course, earlier in the case. When ASRC quickly volunteered to pay for and provide the transcript of the trial in the case for the Supreme Court appeal, I wondered why, until I tried to use the copy they provided me while preparing my brief. Some of Judge Tan's statements favorable to me were not in the transcript. Some statements were mislabeled regarding who said them; others were mistakenly transcribed; again in the purchasers (ASRC's) favor. It was too close to the deadline for filing for me to obtain a copy of the recording by then.

When I listened to the recording of the December 5, 2014 hearing to document the inconsistencies with the transcript filed by ASRC, I was shocked that some of the comments by Judge Corey that I wanted to cite to in the recording were not on the recording. For example "Judge Tan got it right" was not on the recording anywhere.

The whole discussion by Judge Corey about Judge Tan getting the law right in 2009, and ASRC properly "complying with the law" as it was then, which justified giving them a "do over" and allowing them to start the process all over again as if no trial had even happened was missing. Judge Corey's final comment "and I know Mr. Pederson thanks me too" was sanitized into something quite different to fit Judge Corey's claim in his denial that he just meant I was thanking him for changing the date of the hearing.

I was shocked; I thought that recordings of hearings were supposed to be word for word actual recordings of the hearing and unaltered and unedited, which they are. If a recording was going to be "sanitized" to protect a Judge for inappropriate comments and conduct during a hearing, the December 5, 2014 hearing in the *Pederson* case would be the perfect hearing. I was the only person for my side in the court room. I was representing myself. There was the defense counsel and his client and the judge and his clerk. Those were the only people there.

The only people with any real reason to remember exactly what was said would be anyone with a strong reason to remember. However, I had also immediately gone and prepared a contemporaneous document that corroborates my memory, my Motion to Disqualify, highlighting a traumatic experience for a legal practitioner, being mistreated and bullied by a judge. Judge Corey's denial, issued on December 12, 2014, does not actually dispute what I recalled was said but primarily disputes the intent of the court in making the statements. I am attaching a copy of the denial for additional factual detail.

I do not know at this time when or how the recording of the December 5, 2014 hearing was edited or "sanitized", which is how I describe the edits for lack of a better term, but I firmly believe it was. Recordings must sometimes need editing to remove swear words or confidential information or other things that undoubtedly need to be edited out. It is possible that during such a process, the recording of this hearing could have been edited to conform the recording to Judge Corey's denial of my motion. The discovery process will illuminate when editing could occur.

Also missing or at least not fully conveyed by the recording of the hearing was Judge Corey's considerable focus on trying to convince me to add claims related to the additional documents ASRC claimed it had provided me for inspection pursuant to new demands I had made after the Supreme Court's ruling. Judge Corey, like the other judges assigned after him recognized that the Alaska Supreme Court Opinion only remanded specific issues for further proceedings. The proper purpose issue, having been conceded by ASRC at trial was NOT remanded, so both Mr. Torgerson and Judge Corey recognized a way had to be found to obtain jurisdiction over the issue. The procedure or theory Judge Corey used to obtain jurisdiction to "do-over" the entire case claimed that because the Supreme Court supposedly "changed the law", which Judge Corey knew was an erroneous theory, rendered any actions or omissions based upon the theory, an intentional denial of my legal rights and beyond the proper subject matter jurisdiction of the court.

Both Judge Corey and Torgerson tried, with the judge leading the effort, to "convince" me to "voluntarily" (actually trick me) bring the allegedly provided additional records into the case as an avenue to provide jurisdiction. I refused of course, recognizing the tactic. Judge Corey eventually gave up on trying to "convince" me to agree to bring in the other records and instead adopted the "changed the law" ruling and simply ordered that ASRC would be allowed to essentially start all over and be allowed to again respond to my demands more than five years after the first time. Torgerson then proclaimed that he could then also argue the proper purpose issue pursuant to the theory.

I brought up and discussed this focus by Judge Corey in my motion to disqualify as evidence of bias, which is why the edited recording makes it sound as though Judge Corey was completely neutral and he made sure to proclaim the *Pederson* case was only about the 2009 records in the sanitized recording. One thing the recording does not make clear is that my statement that "that is exactly right" regarding the records in dispute in the case was part of my argument to convince Judge Corey that the 2009 records were the only records at issue; I was not agreeing with him as the recording makes it seem.

The combined effect of Judge Corey's actions, primarily his erroneous rulings, was to deny me the equal protection of the law that any other Alaskan citizen and corporate stockholder would receive under the law; the enforcement of the provisions of AS 10.06.430, Alaska's corporate inspection statute, as guaranteed by 43 USC sec. 1606 (h)

(1) (A), and the proper application of an Opinion of the Supreme Court of Alaska. Judge Corey also improperly exercised jurisdiction beyond the Court's remand pursuant to the "changed the law" theory, which caused further harm, as demonstrated by the Alaska Supreme Court's summary reversal of the theory.

Claim 2: The allegations made above in Claim 1 are re-alleged and referenced herein as if set out in full. After the removal of Judge Corey from my case, Judge Erin Marston was assigned to the case. On more than one occasion from about February of 2015 through about March 1, of 2018, my right to the equal protection of the law and rights to due process were violated by the actions or omissions of Judge Marston, in violation of one or more of the federal statutes listed in section A above. In addition, the actions or omissions of Judge Marston that violated my civil rights were committed beyond the jurisdiction remanded by the Alaska Supreme Court Opinion in *Pederson*.

Supporting Facts

After Judge Marston was assigned to presiding over the remanded *Pederson* case from Judge Corey, he continued the pattern and practice began by Judge Corey of actions or omissions that denied my rights to equal protection under the law. In an effort to conclude the liability portion of the case, consistent with the Opinion of the Supreme Court of Alaska, I filed a second motion for summary judgment. In his written ruling denying my motion, Judge Marston formally adopted the unsupported "the Supreme Court changed the law" legal theory that Judge Corey had orally adopted during the

December 5, 2014 hearing discussed above (the discussion that is largely missing from the recording), which according to Judge Marston's ruling, completely exonerated ASRC from liability for violating AS 10.06.430. According to the theory, ASRC "complied" with the law as "it existed" in 2009, pursuant to Judge Tan's ruling, then the law "was changed" by the Supreme Court in 2014, therefore, ASRC did not violate the law in 2009.

As Judge Corey had stated he was going to force me to do to obtain a judgment, I appealed Judge Marston's exoneration of ASRC to the Alaska Supreme Court. On July 20, 2016 the Court summarily reversed Judge Marston ruling that "the superior court erred as a matter of law by concluding our shareholder inspection rights rulings in *Pederson*...were a change from the law existing in 2009;". The Court then directed Judge Marston to "reevaluate" my motion with the "correct legal framework in mind". A copy of the Alaska Supreme Court's July 20, 2016 Order is attached for further factual detail.

After the Alaska Supreme Court's July 20, 2016 ruling, Judge Marston said in a status conference that he would issue summary judgment pursuant to the Supreme Court's directive. This turned out to not be true. Instead, in February 2017, Judge Marston issued a ruling entitled Order Granting Partial Summary Judgment, however, the order actually denied summary judgment and reached a nearly identical result as his ruling that had been summarily reversed by the Supreme Court. Pursuant to the new

ruling, ASRC would get its "do-over", this time because Judge Marston found that "no court" had ruled on the proper purpose issue, which Judge Marston recognized would be a factual basis for exonerating ASRC and less susceptible to reversal on appeal.

Of course this finding by Judge Marston was incorrect. The original trial court, Judge Tan, had addressed the proper purpose issue in pre trial motions and found during trial the issue was "not in dispute" even stating that I had a proper purpose. The Supreme Court had discussed the issue, but since it was conceded during trial made no ruling on the issue. I presented evidence in subsequent motions submitted to Judge Marston. Judge Marston denied or stayed the motions I filed and proceeded on his and ASRC's quest to re-litigate the proper purpose issue as an avenue to exonerate ASRC despite the unambiguous rulings of the Supreme Court of Alaska.

To avoid another appeal by me to the Supreme Court of Judge Marston's erroneous rulings, the court or someone somehow accomplished preventing me from actually receiving my copies of Judge Marston's orders. I did not actually obtain a copy of Judge Marston's initial order re-evaluating and denying my summary judgment motion as directed by the Supreme Court discussed above, until approximately two months after it was issued. I finally obtained a copy when I went to the clerk's office and requested a copy in April of 2017. The ruling had been issued in February. It was well past the deadline for a timely appeal. In nearly nine years of litigation involving several cases between ASRC and myself, this was the first order from a court that I could recall that I

had not received.

Initially, I thought that it could have been lost or a mistake in delivery or some other innocent reason for my not receiving that order. But then it happened again. I did not timely receive the next reviewable order issued by Judge Marston. By the time I obtained a copy, it was again too late to timely ask for review by the Supreme Court. Then it happened a third time; I again did not receive a third reviewable order issued by Judge Marston.

The third order included notice of a hearing scheduled by the court. A hearing I did not attend because I did not receive the order and had no knowledge that a hearing was even scheduled. Later when I reviewed the case file to obtain orders I did not receive, I found an admonition in the minute notes of the hearing in which Judge Marston stated he would dismiss the case if I missed another hearing. Of course, the court and ASRC counsel both likely knew as they discussed the issues without me that I had not received the order and had no notice of the hearing.

After each of the three times discussed above that I did not receive orders at my address of record, I notified the court in a filing. After the third time, I also began to periodically go to the clerk's office to review the case file to look for orders that Judge Marston may have issued that I had not received. I also rented a locked and secure mailbox for delivery of the court's orders and notices and for service by the opposing party to eliminate any possibility that orders were "disappearing" from my mailbox. I

also filed a change of address for service with the court and the reason why such a measure was needed. I am attaching two of the filings entitled Notice of Failure of Service and my notice of change of address for additional factual detail.

In the meantime, Judge Marston, apparently tiring of attempting to fend off my fully supported filings arguing against re-opening a closed and decided issue post appeal, decided he was simply going to unilaterally order the issue be re-opened and re-litigated and take jurisdiction. I had also finally received an order that I would try to get reviewed; Judge Marston's stay order. In my petition for review I highlighted my problems with receiving orders and that Judge Marston was refusing to comply with the Supreme Court's July of 2016 Order. I realized it was a tenuous proposition that the Court would accept the petition to review a stay order, but I thought they might at least know what was occurring on remand. The petition was not docketed.

After Judge Marston conducted one last hearing in which he ordered the parties to submit briefs on whether the proper purpose issue should be re-opened and whether to grant the discovery request of ASRC to allow them to "find evidence" from me to oppose my proper purpose, I obtained copies of two orders I had not received on a trip to the clerk's office to check the file for orders just in case. To my surprise, these two orders were signed by Judge Morse, the presiding judge of the Third Judicial District and not Judge Marston. It would be speculation on my part as to why Judge Morse ruled on these requests and issued these two orders.

Like in the case of Judge Corey's actions, all of the actions or omissions by Judge Marston that were taken on the basis of the erroneous "changed the law" theory, and afterwards when he just unilaterally decided to re-open the proper purpose issue despite the specific and limited remand orders in the 2014 *Pederson* Opinion that Marston was directed to comply with by the Alaska Supreme Court in July of 2016, were beyond the jurisdiction conveyed by the specific and limited remand orders. All of the violations of my civil rights by Judge Marston's actions or omissions outside of the jurisdiction actually conveyed are violations for which I can seek at least injunctive relief.

The combined effect of Judge Corey's and Judge Marston's actions of continuing and adding to the previous court's actions or omissions, primarily their erroneous rulings, were to deny me the equal protection of the law that any other Alaskan citizen and corporate stockholder would receive under the law; specifically the enforcement of the provisions of AS 10.06.430, Alaska's corporate inspection statute, as guaranteed by 43 USC sec. 1606 (h) (1) (A), and the proper application of a ruling of the Supreme Court of Alaska, which impermissibly reduced the value of my ASRC stock, taking a valuable personally property right from me without due process of law.

Claim 3: The allegations made above in Claim 1 and Claim 2 are re-alleged and referenced herein as if set out in full. After the apparent removal of Judge Marston from my case, Judge Andrew Peterson was assigned to the case. On or about August 23, 2018, and possibly on additional dates, my right to the equal protection of the law was violated

by the actions or omissions of Judge Peterson, in violation of one or more of the federal statutes listed in section A above. In addition, the actions or omissions of Judge Peterson that violated my civil rights were committed beyond the jurisdiction remanded by the Alaska Supreme Court for further proceedings by the Court's Opinion in *Pederson*.

Supporting Facts:

On August 23, 2018, Judge Andrew Peterson, who had been assigned to preside over my case issued an Order ruling on my and ASRC's arguments presented in our briefs regarding the proper purpose issue which Judge Marston ordered us to submit. I did not receive a notice of assignment at my mailing address of record, so I am unsure how or when Judge Peterson was assigned, nor do I know the reason for Judge Marston's removal. Judge Marston's removal must have been why Judge Morse issued the orders just mentioned above.

In a nutshell, Judge Peterson's Order continued the process and practice began and that has continued of the two prior judges assigned to this case since remand by the Alaska Supreme Court in 2014; of working not to implement the Opinion but to delay or prevent its application to this case thereby violating my civil rights. By continuing the process and practice, by continuing to ignore and disregard the actual law and the facts and by implementing the prior orders of both Judge Corey and Judge Marston, Judge Peterson, has continued to deny me the equal protection of the law that any other corporate shareholder in Alaska would receive from the courts of the state, which impermissi-

bly reduced the value of my ASRC stock, taking a valuable personally property right from me without due process of law. Since the improper actions were done at least partly because I am an Alaska Native, the actions of Judge Peterson which violate my civil rights are a violation of the federal statutes under which I bring this case.

Judge Peterson's order continued down the path started by Judge Corey and advanced by Judge Marston; toward re-litigating issues that had already been resolved in the case, issues actually conceded prior to and during trial, post appeal. An issue that was not remanded, that the judges were wholly without jurisdiction to hear. All four of the judges worked towards this same goal to deny me the benefits of my rights under AS 10.06.430, as interpreted by the Alaska Supreme Court. In short, the four judges, working in concert, have collectively denied me the equal protection of the laws that any other Alaska citizen would enjoy. Whether the four judges actually met to hatch or continue an intentional conspiracy plan together makes little difference under the statute; the fact that their individual actions or omissions evidenced intent to participate in the shared objectives of the conspiracy, and furthered those shared objectives, is what is important and determinative. And the conspiracy, began by Judge Corey, and continued by each successive judge, including Judge Peterson, to avoid implementing the Supreme Court Opinion and refusing to enforce the inspection statute for the benefit of an Alaska Native violated the federal statutes.

The order issued by Judge Peterson not only again ignores the issues actually and

specifically remanded for further proceedings by the Supreme Court, namely the constructive denial of my inspection rights by ASRC's demand that I sign unreasonable confidentiality agreements, the order also makes several material factual errors, unreasonably parses the wording of the Supreme Court Opinion to fit his agenda and misinterprets the legislative history.

The important point about these errors are that they are not innocent mistakes but intentional to support the desired conclusion of Judge Peterson, which is to support taking jurisdiction of issues not remanded and allow ASRC to attack my proper purpose, through nearly unfettered discovery and without any meaningful limitations in the order. There is not even a limitation that restricts the attacks to those that existed when I made my demands in 2009. Also, the order includes a blanket denial of all pending and stayed motions filed by me before he was assigned including my fourth motion for summary judgment and motion to comply with the rulings of the Supreme Court. Finally, the order reads more like the brief of an attorney intending to persuade, as opposed to an order of a judge, as a newly minted jurist may revert to. The order is the work of a judge favoring one litigant to a pre-ordained result, while trying to appear impartial.

I have attached Judge Peterson's order and my response to the denial of my previously filed orders entitled Constitutional Claims and Motion for Summary Judgment, for additional factual detail. My motion provides evidence of my proper purpose but also

Pederson v. Morse, Corey, Marston. Peterson & Torgerson Complaint page 21

Case 3:18-cv-00252-RRB   Document 1   Filed 10/23/18   Page 21 of 49

details the "mistakes" and faulty reasoning and arguments in Judge Peterson's order, which might appear reasonable if read in isolation. The "constitutional claims" in my motion in the *Pederson* are intentionally similar to the claims in this complaint, because they were intended to notify the trial court that they are violating my rights and that I have potential federal constitutional claims and to request that they quit violating my rights by granting my motion for summary judgment that follows. I knew the state trial court was not the proper venue for filing federal civil rights claims, which I am now formally filing in the appropriate court **in this complaint.**

The combined effect of Judge Peterson's, Judge Corey's and Judge Marston's actions continuing and adding to the previous court's actions or omissions, primarily the erroneous rulings of each, was to deny me the equal protection of the law that any other Alaskan citizen and corporate stockholder would receive under the law; specifically the enforcement of the provisions of AS 10.06.430, Alaska's corporate inspection statute, as guaranteed by 43 USC sec. 1606 (h) (1) (A), and the proper application of a ruling of the Supreme Court of Alaska, in violation of the federal statutes listed in section A above.

Claim 4: The allegations made above in Claim 1, Claim 2 and Claim 3 are re-alleged and referenced herein as if set out in full. After the apparent removal of Judge Marston from my case, Judge William Morse was involved in and issued at least two orders in the *Pederson* case, including granting my request to submit an over length reply on February 20, 2018. Judge Morse has been the Presiding Judge of the Third Judicial

District and Anchorage Trial Courts since the remand of my case from the Alaska Supreme Court. On or about February 20, 2018, and possibly on other dates, my right to the equal protection of the law was violated by the actions or omissions of Judge Morse, in violation of one or more of the federal statutes listed in section A above.

Supporting Facts:

Since soon after the retirement of Judge Tan from the bench, Judge Morse has been the Presiding Judge of the Third Judicial District at Anchorage. This is the district where the Anchorage Trial Courts are and the courts in which the *Pederson* case has been litigated since remand. This is the district in which Judge Morse not only issued at least two orders in the *Pederson* case, but in which he supervises the other three defendant judges. I expect that he plays a significant role in the assignment of judges within his district to the cases of other judges upon retirement, which might result in the removal of a reassigned judge from other cases like when Judge Corey was removed from my case. I expect there might be a role played by the Presiding Judge when a judge is assigned to replace a prior judge. There may even be advice or direction given by the Presiding Judge on how to proceed with a case so assigned. I have attached the orders signed and issued by Judge Morse as further factual detail for this complaint.

I believe that Judge Morse knew or should have known what was occurring with my case and the actions and omissions of the assigned judges under his supervision that were depriving me of, and continues to deprive me of the equal protection of and due

process of the law. Judge Morse may even have played a role in directing the actions or omissions of the judges assigned to my case under his supervision. Judge Morse worked in a supervisory capacity over the three judges discussed above who working in concert deprived me of my right to the equal protection of the law. He likely could have directed action consistent with the Opinion of the Alaska Supreme Court as opposed to allowing the actions or omissions beyond the jurisdiction of the remand that occurred, and which continues. Judges do not work in a vacuum, especially when being re-assigned and replaced on nearly an annual basis on one remanded case. Allowing state resources to be spent on the shared objective of exonerating ASRC from liability for violating AS 10.06.430 for nearly a decade now, for over four years since remand which clearly found liability, by three separate judges at a time when the court closes early on Fridays due to lack of resources is inexcusable.

The combined effect of Judge Morse's, Judge Peterson's, Judge Corey's and Judge Marston's actions continuing and adding to the other judges actions or omissions, including the Presiding Judge's unexplained frequent replacement of judges, and possible failure to supervise, which allowed the erroneous rulings of the assigned judges, was to deny me the equal protection of the law that any other Alaskan citizen and corporate stockholder would receive under the law; specifically the enforcement of the provisions of AS 10.06.430, Alaska's corporate inspection statute, as guaranteed by 43 USC sec. 1606 (h) (1) (A), and the proper application of a ruling of the Supreme Court of Alaska,

which impermissibly reduced the value of my ASRC stock, taking a valuable personal property right from me without due process of law.

Claim 5:   The allegations made above in Claim 1, Claim 2, Claim 3 and Claim 4 are re-alleged and referenced herein as if set out in full.  On several different dates between August of 2014, when the *Pederson* case was remanded continuing until today, includ-ing on or about, December 5, 2014 and on or about July 18, 2016, James Torgerson of Stoel Rives personally participated in and /or facilitated the actions or omissions of the judges discussed above and those actions or omissions by Mr. Torgerson, in concert with one or more of the judges named above, deprived me of my right to the equal protection of the law, and in doing so significantly reduced the value of my ASRC stock, taking a valuable personally property right from me without due process of law, in violation of one or more of the federal statutes listed in section A above.

Supporting Facts:

     At a status conference held on or about July 18, 2016, Mr. Torgerson lied in open court, falsely claiming that I had agreed with ASRC's claim that ASRC had provided all the records they were obligated to provide me.  This of course was a demonstrably false claim to which I had to respond.  The court used my response as one of its reasons for denying my motion for summary judgment in Judge Marston's falsely titled "order granting partial summary judgment" which actually denied my motion.  The basis of the denial was that the comments during the hearing had demonstrated that there was a

factual "dispute" over whether ASRC had actually provided the records or not. The Supreme Court had already conclusively ruled that ASRC had not.

Whether this falsehood by Torgerson was pre-arranged with the court, would likely be difficult to prove, but the result was the defense counsel and court working in concert during the conference to deny my summary judgment motion in the face of the Supreme Court's directive issued to Judge Marston. The Alaska Civil Rules allow for the staff of an attorney and the staff of a judge to communicate about "scheduling" without violating rules regarding ex-parte communications, which provides an opportunity to pre-arrange schedules, and perhaps other things, between attorneys and judges.

I have already discussed the transcript filed by Mr. Torgerson of the December 5, 2014 hearing that did not include statements made by Judge Cory during the hearing, including "Judge Tan got it right" and other statements regarding how the Supreme Court had "changed the law" supposedly entitling ASRC to a do-over of the entire case. Mr. Torgerson is presumed to have reviewed for accuracy the transcript he files in evidence in a case. It would be unethical to knowingly file an inaccurate transcript as evidence. In addition, the final statement by Mr. Torgerson on the recording I obtained from the clerk is more than the "thank you" to Judge Corey that I recall and noted in my Motion to Disqualify. It is also more than what Judge Corey noted in his denial of my motion as simply a "thank you" which was issued close in time to the hearing. I cannot definitively say that I believe Mr. Torgerson might have edited his comments on the

recording, but the difference is significant and material.

Mr. Torgerson is also the genesis of the unsupported "changed the law" theory used by both Judge Corey and Judge Marston that delayed the *Pederson* case for at least two of the last 4 years since remand. Mr. Torgerson still attempts to claim the benefit of the theory when periodically claiming Judge Corey's December 5, 2014 oral "order" still provides ASRC rights. This is despite the Alaska Supreme Court having completely disavowed and overruled the theory in its 2016 Order.

In short, several, if not all of the actions or omissions of the Alaska Superior Court judges discussed above were facilitated by or participated in by Mr. Torgerson. The actions, false statements in open court, promoting clearly unsupported and ridiculous "legal" theories to delay a case which creates more work for an opposing party, submitting false or inaccurate evidence, are not only unethical, but also amounts to working in concert with the judges to deny my right to equal protection under the law. Mr. Torgerson would not have been able to get away with these actions but for me being an Alaska Native and the presiding judges being willing or even pre-disposed, intentionally or otherwise, to take the actions or omissions against me for that reason. These actions by Mr. Torgerson which have all but eliminated my AS 10.06.430 inspection right as it relates to my ASRC stock for nearly a decade, has significantly impaired the value of the stock, considering that the inspection right is one of the most valuable rights incident to stock ownership. The Alaska statutes have valued each denial of the right at 10% of the

value of the stock.

The combined effect of Mr. Torgerson's, Judge Morse's, Judge Peterson's, Judge Corey's and Judge Marston's actions, by facilitating, continuing and adding to the other four named persons actions or omissions, including his facilitating of the judges rulings, and possible pre-arranged actions, which allowed the erroneous rulings of the assigned judges, was to deny me the equal protection of the law that any other Alaskan citizen and corporate stockholder would receive under the law; specifically the enforcement of the provisions of AS 10.06.430, Alaska's corporate inspection statute, as guaranteed by 43 USC sec. 1606 (h) (1) (A), and the proper application of a ruling of the Supreme Court of Alaska.

Claim 6: The allegations made above in Claim 1, Claim 2, Claim 3, Claim 4 and Claim 5 are re-alleged and referenced herein as if set out in full. On several occasions between August of 2014, when the *Pederson* case was remanded continuing until today, specifically including on or about, December 5, 2014 and on or about July 18, 2016, James Torgerson of Stoel Rives participated in and /or facilitated the actions or omissions of the other persons named as defendants discussed above, specifically including Judge Corey and Judge Marston, and those actions or omissions by Mr. Torgerson, in concert with one or more of the defendants named above, constituted a conspiracy of two or more persons, who all share the common objective of preventing, delaying or denying judgment for me in the *Pederson* case, which under federal law deprived me of my right

to the equal protection of the laws, and my due process rights under the law, in violation of one or more of the federal statutes listed in section A above, specifically including 42 USC sec. 1985.

Supporting Facts:

Because Mr. Torgerson has participated in the *Pederson* case since remand as counsel for the defendants, he has been involved in many, if not most of the actions or omissions, while working in concert with most if not all of the other Defendants to achieve the defendants shared objective of not only exonerating, or relieving ASRC from liability for its officers denial of my AS 10.06.430 inspection right, but also the shared objective of denying me the equal protection of the law and due process of law, which necessarily flows and results from the actions or omissions of the Defendants when working in concert to achieve their primary objective. The actions or omissions, of Torgerson, many of which were highlighted in Claim 5 above are summarized below, focusing more on how his actions amounted to acting in concert with the other defendants to achieve their shared objectives.

At a status conference held on or about July 18, 2016, Mr. Torgerson made false statements, falsely claiming that I had agreed with ASRC's claim that ASRC had provided all the records they were obligated to provide me. This was a false claim to which I had to respond. Judge Marston used my response as one of his reasons for denying my motion for summary judgment in his order entitled "order granting partial summary

judgment." The basis of the denial was that the comments elicited by Torgerson's false statement during the hearing had demonstrated that there was a factual "dispute" over whether ASRC had actually provided the records or not. The Supreme Court had already conclusively ruled that ASRC had not.

Quite possibly the worst (or best) example of Mr. Torgerson and Judge Marston working together to achieve their shared objectives was Torgerson's belief that he could actually make a ruling and issue what amounted to an "order" to me without even filing a motion with Judge Marston to authorize the issuance. Judge Marston had denied my third motion for summary judgment, deciding it was "another" motion for reconsideration, even though I had previously filed a motion for reconsideration. Judge Marston, at the urging of Torgerson, ruled my third motion "another" motion for reconsideration, even though the rules do not allow successive motions for reconsideration. I soon after filed a fourth motion for summary judgment, addressing all of the issues that "justified" the denial of my third motion. Attorney Torgerson's response was his "ruling" in a Notice of Mootness, that my fourth motion was simply "another" motion for reconsideration and was therefore moot and that he was not required to respond unless "directed" to do so by Judge Marston.

With my fourth motion for summary judgment I also filed a Motion for the Court to Comply with Orders of the Supreme Court of Alaska. This motion pointed out that Judge Marston's steadfast refusal to address or even acknowledge the Supreme Courts

remand orders in the Court's 2014 Opinion or the issues actually amounted to judicial

nullification of the Supreme Court's rulings. In his Notice of Mootness, Torgerson also

deemed this motion a motion for reconsideration. After Torgerson's ruling of moot-

ness, I filed a response objecting to [Quasi-Judge] Torgerson's ruling that my fourth

motion was moot, and that Torgerson lacked authority to even respond to my motion for

the court to comply with the rulings of the Supreme Court, but I don't believe Judge

Marston responded to my objection. I don't believe Judge Marston ever responded to

my motion for him to comply with the Supreme Court's rulings either.

Judge Marston finally peripherally addressed my objection to Torgerson's "ruling"

that my fourth motion was moot approximately two months later when he issued a stay

of my fourth motion pending the parties briefing and a ruling on his re-opening of the

proper purpose issue. The stay order recognized my fourth motion as a motion for

summary judgment as opposed to Torgerson's suggestion that the motion was actually

just another motion for reconsideration. Torgerson never filed an opposition to my

fourth motion for summary judgment. These are all examples of Mr. Torgerson working

in concert with Judge Marston to achieve their shared objective of avoiding and prevent-

ing the implementation of the rulings of the Alaska Supreme Court while they worked

together to develop the factual basis, "lack of a proper purpose" to allow ASRC to avoid

liability. This apparent conspiracy between Judge Marston and Mr. Torgerson, which

began when Judge Corey adopted Torgerson's "changed the law" theory, has effectively

denied my equal protection under the law for most of the last four years since remand.

The transcript filed by Mr. Torgerson of the December 5, 2014 hearing that did not include statements made by Judge Cory during the hearing, including "Judge Tan got it right" and other statements regarding how the Supreme Court had "changed the law" entitling ASRC to a do-over of the entire case was filed in a pleading in which Judge Corey and Mr. Torgerson also shared a common objective. The shared objective had the effect, both directly and indirectly of denying my right to the equal protection of the law and the due process of law, violating my civil rights. It would be unethical to file an inaccurate transcript to gain an advantage in the case for his client or in this situation for the protection or benefit of a judge.

In addition, the final statement by Mr. Torgerson on the recording I obtained from the clerk is more than the "thank you" to Judge Corey that I recall and noted in my Motion to Disqualify. It is also more than what Judge Corey noted in his denial of my motion as simply a "thank you." It would likely be difficult to prove, but it is not out-side the realm of possibility that Mr. Torgerson participated in the editing of the record-ing discussed above to protect Judge Corey, which would be the only explanation for the change from "thank you."

Mr. Torgerson is also the genesis of the unsupported "changed the law" theory adopted by both Judge Corey and Judge Marston. This discredited legal theory coined by Torgerson resulted in furthering the shared objective of Judge Corey to delay the case

until he hoped I had submitted and gave up my rights under AS 10.06.430, and Judge Marston's objective shared with Mr. Torgerson of the actual exoneration of ASRC. The actions of Torgerson, Judge Corey and Judge Marston were undertaken despite all of them being very experienced attorneys who knew or should have known the "changed the law" theory was baseless. I have found no case law where a state Supreme Court ruling finding a party broke the law, also exonerated that same party for the violation.

In short, several, if not all of the actions or omissions of the Alaska Superior Court judges discussed above were facilitated by or participated in by Mr. Torgerson to accomplish objectives shared with the judges; furthering shared objectives that added up to a conspiracy that had the effect of violating my civil rights. The actions of Torgerson, demonstrate working in concert with the judges to deny my civil rights because the judges knowingly accepted the assistance or facilitation provided by Mr. Torgerson to achieve their own objectives. Even when the judges knew the contribution of Torgerson towards the shared objective was factually false or legally unsupportable, they accepted it anyway in furtherance of the shared objective. The shared objective to prevent or deny me, an Alaska Native, the judgment I firmly believe a white corporate shareholder would already have been granted under the same facts.

The combined effect of Mr. Torgerson's, Judge Morse's, Judge Corey's, Judge Marston's, and Judge Peterson's actions or omissions, acting in concert to achieve a shared objective, facilitating and allowing the erroneous rulings of the assigned judges,

which prevented compliance with the Supreme Court's rulings, was to deny me the equal protection of the laws that any other Alaskan citizen and corporate stockholder would have received under the law; specifically the enforcement of the provisions of AS 10.06.430, Alaska's corporate inspection statute, as guaranteed by 43 USC sec. 1606 (h) (1) (A), and the proper application of a ruling of the Supreme Court of Alaska.

Claim 7:  The allegations made above in Claim 1, Claim 2, Claim 3, Claim 4, Claim 5 and Claim 6 are re-alleged and referenced herein as if set out in full.  On or about December 5, 2014, and possibly on occasions both before and after that date, Judge Corey participated in and acted in concert with Mr. Torgerson, which constituted a conspiracy of two or more persons.  Both Judge Corey and Mr. Torgerson shared the common objective of preventing or denying judgment for me in the *Pederson* case, which under federal law deprived me of my right to the equal protection of the laws, and my due process rights under the law, violating one or more of the federal statutes listed in section A above, specifically including 42 USC sec. 1985.

Supporting Facts:

The actions or omissions of Judge Corey, acting in concert with the actions or omissions of Torgerson formed the genesis of the conspiracy to deny my civil rights. While Judge Corey may not have realized he was participating in a conspiracy that resulted in the denial of the civil rights of an Alaska Native citizen, he most surely intended to take the action, or omissions, that in concert with the actions or omissions of

another person, Mr. Torgerson (and possibly Judge Morse), which resulted in the denial of the equal protection of the law from me and violations of my due process rights.

During Judge Corey's hearing on my Motion for Judgment Consistent with the Opinion of the Supreme Court of Alaska, in *Pederson*, which was held the morning of December 5, 2014, Judge Corey made it perfectly clear that he was not going to be issuing judgment in my favor, regardless of the Alaska Supreme Court's Opinion recently having been issued mostly in my favor. In fact, during the hearing, Judge Corey instead made it clear that for me to obtain judgment against the Arctic Slope Regional Corp. ("ASRC") from his court would require another appeal to the Supreme Court.

When he made this clear to me, he also had discussions with Mr. Torgerson about how long the initial appeal to the Supreme Court had taken, clearly to assure Torgerson that he could drag the case on at least that long. In the edited recording to make himself sound neutral Judge Corey says "anyone" when asking how long the appeal took, but "anyone" was not actually said during the hearing. This edit was made because I raised the issue of the discussion of how long a delay could be achieved between Judge Corey and Torgerson in my motion to disqualify.

Judge Corey had significant discussion about the "changed the law" theory first advanced by Mr. Torgerson during the December 5, 2014 hearing. This allowed Mr. Torgerson to advance and argue for additional objectives that "sprung" from the theory, namely that the proper purpose had to be re-opened and that a new trial had to be sched-

uled.   They worked together to fashion the 70 day time period in which ASRC was

supposed to gather records that complied with the Supreme Court's ruling; but no

additional records have been provided to me or entered into evidence in the case. It

appeared as though the whole act had been orchestrated and choreographed between the

two players beforehand.  In short, Judge Corey and Mr. Torgerson acted in concert to

delay or avoid complying with the remand orders and rulings of the Supreme Court,

actions which had the effect of denying me the equal protection of the enforcement of

the inspection statute that white stockholders would likely receive.

 The subsequent events discussed in Claim 1 above reinforce the allegation of a

conspiracy between Judge Corey and Mr. Torgerson to deny me my rights to equal

protection and due process.  Rather than rehashing the facts and events here, I will

instead point out how the actions of Judge Corey, working in concert with Mr.

Torgerson deprived me of my civil rights and the facts that support this claim.  When I

reviewed the transcript filed by Mr. Torgerson, it was evident to me that some material

statements by Judge Corey were not in the transcript, primarily the "changed the law"

discussion including the comment that "Judge Tan got it right."  Mr. Torgerson filed the

transcript, not only for the benefit of his client, but also to protect Judge Corey from the

potential ramifications of the comments and the way he acted during the December 5

hearing.   Again the two defendants worked in concert to produce and file inaccurate

evidence to my disadvantage, violating my civil rights.

The transcript did not include statements made by Judge Cory during the hearing; this evidence was filed with a pleading in which Judge Corey and Mr. Torgerson also shared a common objective. The shared objective had the effect, both directly and indirectly of denying my right to the equal protection of the law and the due process of law, violating my civil rights. Mr. Torgerson must have known the recording and transcript were inaccurate. Lawyers tend to recognize when unfavorable evidence for their interests exist. Keeping Judge Corey, an extremely favorable judge for ASRC, openly biased and clearly on their side in the hearing was important to Torgerson's case so when the favorable transcript was produced and filed it had to be apparent that it was inaccurate and it follows that the recording from which it was made was also inaccurate.

In addition, the final statement by Mr. Torgerson on the recording I obtained from the clerk is more than the "thank you" to Judge Corey that I recall and noted in my Motion to Disqualify. It is also more than what Judge Corey noted in his denial of my motion as simply a "thank you." Torgerson must have remembered and recognized that what was submitted on the transcript at least was materially different than what he actually said during the hearing.

Mr. Torgerson is also the genesis of the ludicrous "changed the law" theory. This discredited legal theory coined by Torgerson resulted in furthering the shared objective of Judge Corey to delay the case until he hoped I had submitted and gave up my rights under AS 10.06.430, and Judge Marston's objective shared with Mr. Torgerson of the

actual exoneration of his client. The actions of Torgerson, Judge Corey and Judge Marston were undertaken despite all of them being very experienced attorneys who knew or should have known the "changed the law" theory was baseless.

The combined effect of Judge Corey's and Mr. Torgerson's collective actions, combined with Judge Marston's, and Judge Peterson's actions or omissions, acting in concert to achieve a shared objective, the facilitating and issuing of the erroneous rulings of the assigned judges, which prevented enforcement of the Supreme Court's rulings, was to deny me the equal protection of the laws that any other Alaskan citizen and corporate stockholder would have received under the law; specifically the enforce-ment of the provisions of AS 10.06.430, Alaska's corporate inspection statute, as guar-anteed by 43 USC sec. 1606 (h) (1) (A), and the proper application of a ruling of the Supreme Court of Alaska.

Claim 8: The allegations made above in Claim 1, Claim 2, Claim 3, Claim 4, Claim 5, Claim 6 and Claim 7 are re-alleged and referenced herein as if set out in full. After Judge Corey was relieved of responsibility over the *Pederson* case after only a few months, Judge Marston was assigned to preside over the case. He almost immediately began the continuation of the process that had begun under Judge Corey, while also acting in concert with Mr. Torgerson, to relieve ASRC of liability despite the rulings in the Opinion of the Alaska Supreme Court. Both Judge Marston (like Judge Corey before him) and Mr. Torgerson shared the common objective of preventing or denying

judgment for me in the *Pederson* case, which under federal law deprived me of my right to the equal protection of the laws, and my due process rights under the law, violating one or more of the federal statutes listed in section A above, specifically including 42 USC sec. 1985.

Supporting Facts:

After the denial of my motion for judgment by Judge Corey, I prepared a more comprehensive Motion for Summary Judgment to address the shortcomings pointed out by the court and to do the "more work" that had to be done to prove liability. Mind you, extensive motion practice had been done and a trial had been completed prior to appeal. The material facts were no longer in dispute. The statute required written demand which contained a proper purpose for inspection, and a denial of the demand by a company officer. These had occurred and had been documented at trial and in the Supreme Court Opinion.

Torgerson opposed my motion with his "changed the law" theory claiming it exonerated ASRC and entitled them to a "do over" all the way to starting over by responding to my demands as if none of the prior litigation had even occurred. Judge Marston, like Judge Corey before him, adopted Torgerson's theory and denied my motion on that basis, ruling there could be not liability. In doing so, Judge Marston continued the conspiracy began by Judge Corey, by intentionally adopting an erroneous legal theory to exonerate Torgerson's client.

Additional facts supporting the conclusion that Judge Marston intentionally advanced the conspiracy to deny my rights are highlighted in Claim 6 above. I will simply summarize some of them hers to point out how Judge Marston's actions or omissions, acting in concert with Torgerson, and most importantly, his predecessor, Judge Corey, resulted in the conspiracy that denied my civil rights, in violation of the federal statutes listed on page 1, specifically 42 USC 1985.

At a status conference held on or about July 18, 2016, Mr. Torgerson, falsely claimed that I had agreed with ASRC's claim that ASRC had provided all the records they were obligated to provide me. Judge Marston used my response as one of his reasons for denying my motion for summary judgment in his "order granting partial summary judgment." The basis of the denial was that the comments elicited by Torgerson's lie during the hearing had demonstrated that there was a factual "dispute" over whether ASRC had actually provided the records or not. This was an example of the defense counsel and court working in concert towards the common objective of denying my summary judgment motion in the face of the Supreme Court's directive issued to Judge Marston.

Another example of Mr. Torgerson and Judge Marston working together to achieve their shared objectives was Torgerson's response to my fourth motion for summary judgment; his "ruling" in a Notice of Mootness, that my fourth motion and my motion for the court to comply with the rulings of the Alaska Supreme Court were each

simply "another" motion for reconsideration and were both therefore moot and that he was not required to respond unless "directed" to do so by Judge Marston.

These are all examples of Mr. Torgerson working in concert with Judge Marston to achieve their shared objective of avoiding and preventing the implementation of the rulings of the Alaska Supreme Court while they worked together to develop the factual basis, "lack of a proper purpose" to allow ASRC to avoid liability. Perhaps more importantly, the conspiracy created by the Judges, Corey and Marston working in concert to advance not only Torgerson's objective of relieving his client of liability, but also what seems to be the Alaska Courts objective of supporting large Regional Native corporation executives like ASRC's.

It seems to be an objective of the Alaska courts to create the impression amongst these Native Corporation leaders that state jurisdiction over the states Native lands and Native people is beneficial. Perhaps it is to the small handful of wealthy corporate executives. The treatment I have received from the several courts, along with the Natives who make up the 36% of state prison inmates indicates that state court jurisdiction over us is quite clearly a negative consequence of ANCSA. A veritable nightmare of epic proportions; not unlike the treatment a Black practitioner and Black citizens would receive in the courts of states like Alabama or Mississippi in the 1960's.

This sec. 1985 conspiracy between Judge Marston, the other judges involved in the *Pederson* case and Mr. Torgerson, which began when Judge Corey adopted

Torgerson's "changed the law" theory, has effectively denied my equal protection under the law for most of the last four years since remand. The combined effect of Judge Corey's, Judge Marston's and Mr. Torgerson's collective actions, combined with Judge Peterson's actions or omissions, acting in concert to achieve a shared objective, the facilitating and issuing of the erroneous rulings of the assigned judges, which prevented enforcement of the Supreme Court's rulings, was to deny me the equal protection of the laws that a white Alaskan citizen and corporate stockholder would have received under the law; specifically the enforcement of the provisions of AS 10.06.430, Alaska's corporate inspection statute, as guaranteed by 43 USC sec. 1606 (h) (1) (A), and the proper application of a ruling of the Supreme Court of Alaska, along with the taking of the value of my stock without due process.

Claim 9:  The allegations made above in Claim 1, Claim 2, Claim 3, Claim 4, Claim 5, Claim 6, Claim 7 and Claim 8 are re-alleged and referenced herein as if set out in full. After Judge Marston was apparently removed from presiding over the *Pederson* case perhaps as far back as February of this year, Judge Peterson was assigned to preside over the case after a brief period when Judge Morse apparently oversaw the case.  Like Judge Marston before him, Judge Peterson has almost seamlessly stepped in to continue the process began by Judge Corey, and continued by Judge Marston, while also acting in concert with Mr. Torgerson, the clear objective of which is to relieve ASRC of liability despite the rulings in the Opinion of the Alaska Supreme Court.   Three separate An-

chorage Trial Court Judges now, Peterson, Marston, and Corey have pursued and advanced the common objective of preventing or denying judgment for me in the *Pederson* case, which under federal law deprived me of my right to the equal protection of the laws, and my due process rights under the law, violating one or more of the federal statutes listed in section A above, specifically including 42 USC sec. 1985.

Supporting Facts:

After taking over the case, Judge Peterson has issued the ruling that Judge Marston was planning to issue when he ordered Torgerson and me to submit briefs on whether the proper purpose issue should be re-opened and whether ASRC would be allowed discovery to gather evidence that the court can use to eventually rule, on factual grounds; that Pederson does NOT have a proper purpose and that therefore ASRC is exonerated for denying his inspection demands.

Judge Peterson, predictably, ruled on both issues in ASRC's favor. In his lengthy and what seems to be at first blush, legally defensible order (possibly what he was tasked to produce), Judge Peterson is careful to not appear to be overly biased in ASRC's favor; but the result is undeniable and as transparent as a clear glass window. Torgerson and ASRC have been granted their long sought "do-over"; the proper purpose issue, despite being conceded at trial is revived post appeal, and a new trial will soon be scheduled, where it is equally as predictable that Judge Peterson will find that ASRC has proven that I lack the necessary proper purpose.

The path is as clear as a surveyors marked path for an upcoming highway. It has been a four year path to finally reach this point and Judge Peterson has been brought in as the closer for the team. To finish the game and send me home after a strike out. The new judge might well have proven his commitment and worth to the team, and all he has to do is to continue to deny my rights to the conclusion of the case over which he now presides.

All predictions aside, the specific acts that Judge Peterson committed in further-ance of the conspiracy began by Judge Corey and continued by Judge Marston now include his issuing the order of August 23, 2018. The Order continued the practice of the prior judges assigned since remand of blatantly ignoring the actual remand orders of the Alaska Supreme Court Opinion issued over four years ago now. None of the three courts assigned has taken a single step towards addressing and resolving the remanded issues while continuing to doggedly pursue an issue that was not remanded at all for further proceedings by the trial court on remand. For to address the remanded issues, particularly the constructive denial of my demands as found by the Supreme Court would surely result in ASRC being found liable for denying my demands.

None of the courts, including Judge Peterson now, have even acknowledged this portion of the ruling, which clearly and undoubtedly denies me the equal protection of the law and my rights to due process of law. Instead they continue to march toward a new trial to re-litigate the proper purpose issue, which is the only avenue available to

ASRC for exoneration. This is why the focus of the conspiracy is so laser focused on reviving and re-litigating the issue, to the continuing harm of my civil rights. Also like the prior judges, Judge Peterson spends most of the order justifying improperly taking jurisdiction of an issue that was not remanded, the proper purpose issue.

This potential outcome of the conspiracy, furthered by the action or omissions of Mr. Torgerson and each successive judge assigned, to deny my civil rights can only be prevented by one court; this Court. The conspiracy, furthered by the intentional acts of each successive judge that has presided over the *Pederson* case since remand in further-ance of the conspiracy has denied and continues to deny my civil rights, in violation of the statutes listed on page 1, specifically including 42 USC sec. 1985, while also taking the value of my stock without due process of law.

Claim 10: The allegations made above in Claim 1, Claim 2, Claim 3, Claim 4, Claim 5, Claim 6, Claim 7, Claim 8 and Claim 9 are re-alleged and referenced herein as if set out in full. Judge Morse's contribution to the conspiracy has been his or the courts over which he presides, repeated replacements of the presiding judge on the case. I don't know if I will be able to prove his exact involvement in the removal and appointment process, but if there is evidence of such action, it will clearly have been action that was intentional and in furtherance of the conspiracy of at least three Superior Court judges working in the Anchorage Trial Courts. The conspiracy was facilitated and furthered by the actions of Judge Morse, furthered by the intentional acts of each successive judge

that has presided over the *Pederson* case since remand in furtherance of the conspiracy which has denied and continues to deny my civil rights, in violation of the statutes listed on page 1, specifically including 42 USC sec. 1985, which has also reduced the value of my stock significantly without due process of law.

<u>Supporting Facts:</u>

Judge Morse issued Orders in the *Pederson* case, in between the assignments of Judge Marston and Judge Peterson, and he failed to take any action to ensure compliance with the Opinion of the Supreme Court of Alaska by the judges under his apparent supervision. He had to become familiar with the case to rule on at least one of the orders he ruled upon. By this act or omission, he participated in the furtherance of the objective of the conspiracy, in addition to any role he played in the removal or assignment of the other three judges.

Judge Morse knew or should have known what was occurring with my case and the actions and omissions of the assigned judges under his supervision that was depriving me of, and continues to deprive me of the equal protection of the law and my right to due process. Judge Morse may even have played a role in directing the actions or omissions of the judges assigned to my case under his supervision. Judge Morse worked in a supervisory capacity over the three judges discussed above who working in concert deprived me of my right to the equal protection of the law. He likely could have directed action consistent with the Opinion of the Alaska Supreme Court but failed to do

so. This is a glaring omission that continues to cause me harm in violation of my civil rights.

Three separate Anchorage Trial Court Judges under the supervision of and possibly assigned to the case by Judge Morse, Judges Peterson, Marston, and Corey have pursued and advanced the common objective of preventing or denying judgment for me in the *Pederson* case, which under federal law deprived me of my right to the equal protection of the laws, and my due process rights under the law. Because of the actions or omissions of the judges including their supervisor Judge Morse, working in concert to achieve the same objective, which denied my equal protection and due process rights, they are all co-conspirators violating one or more of the federal statutes listed in section A above, specifically including 42 USC sec. 1985.

**D. Previous Lawsuits**

The state court case discussed in this complaint. Case seeks inspection of corporate records of defendant. The defendant is not the same as defendants in this complaint, and cause of action is different, a state law claim based on a state statute.

Lawsuit 1. *Pederson v. ASRC,* Case No. 3AN-09-10971CI

Plaintiff: Rodney S. Pederson

Defendant: ASRC

Court: Anchorage Trial Court

Judge: Andrew Peterson     Case No: 3AN-09-10971CI

Date Filed: August 2009     Disposition: Still Pending

**E. Request for Relief**

Based on the forgoing, Plaintiff requests relief as follows:

     1.     A money judgment to be entered ONLY against Defendant James E. Torgerson and Stoel Rives in favor of Plaintiff, in an amount to be determined at trial; and

     2.     Injunctive or other relief that the court finds applicable and appropriate to prevent the continuing violations of Plaintiffs civil rights; and

     3.     Injunctive or other relief to ensure the Defendants comply with any applicable court rulings and any applicable statutes to prevent further harm to Plaintiff; and

     4.     Costs, interest and attorney fees as allowed by law, including but not limited to, costs and fees allowed by statutes, court rules or case law; and

     5.     All other relief the court deems just in equity and/or law.

Plaintiff demands a trial by jury. _X_ Yes ___ No

## DECLARATION UNDER PENALTY OF PERJURY

The undersigned declares under penalty of perjury that he is the plaintiff in the above action, that he has read the above civil rights complaint and that the information contained in the complaint is true and correct.

Executed at Anchorage, Alaska on October 23, 2018

_[signature]_

Plaintiff: Rodney Pederson

Rodney Pederson, Pro Se
3705 Arctic Blvd. #1587
Anchorage, AK 99503

Certificate of Service:

The undersigned certifies that a copy of this document and attachments was served on October 23, 2018 by **US Certified Mail, Return Receipt Requested** upon the following:

| | | |
|---|---|---|
| James E. Torgerson | Judge Michael Corey | Judge Erin Marston |
| Stoel Rives | Anchorage Trial Court | Anchorage Trial Court |
| 510 L St,, Ste. 500 | 825 W 4th Ave. | 825 W 4th Ave. |
| Anchorage, AK 99501 | Anchorage, AK 99501 | Anchorage, AK 99501 |
| | | |
| Judge Andrew Peterson | Judge William Morse | |
| Anchorage Trial Court | Anchorage Trial Court | |
| 825 W 4th Ave. | 825 W 4th Ave. | |
| Anchorage, AK 99501 | Anchorage, AK 99501 | |

_[signature]_

Rodney Pederson